IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
------------------------------------------------------------------X
FLUX DRIVE, INC,
FLUX DRIVE, LLC
IMPACT ENGINEERING, INC.,
TRI-TEC MANUFACTURING, LLC,
and PHILIP CORBIN III

Plaintiffs,

Case No. _______________

COMPLAINT

vs.

JURY TRIAL DEMANDED

MICHAEL TROY SPARKS
CMONSENSE DESIGN, LLC,
JOHN QIANG RONG,
ZYRCON GLOBAL STRATEGIES, LLP,
LEIGH WANG, and
LIJUAN ZHAO a/k/a LORA ZHAO

Defendants
------------------------------------------------------------------X

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs FLUX DRIVE LLC, a Delaware limited liability company (FDL) , FLUX DRIVE, INC., a Washington State corporation ("FDI"), IMPACT ENGINEERING, INC., a Washington State corporation ("IE"), TRI-TEC MANUFACTURING, LLC, a Washington State limited liability company ("TTM"), and PHILIP CORBIN III ("PC"), an individual, by and through their undersigned counsel, and allege the following for their Complaint:

**Parties**

1. Plaintiff Flux Drive, Inc. ("FDI"), is a Washington State corporation, with its principal place of business in Kent, Washington State. FDI is owner of certain trade secrets misappropriated

by defendants in this lawsuit, and FDI is the licensee of other trade secrets misappropriated by defendants in this lawsuit.

2. Plaintiff Flux Drive, LLC is a Delaware limited liability company (FDL), has a principal office in Jacksonville, Florida, and is owner of certain trade secret rights licensed jointly to plaintiff FDI and plaintiff TTM.

3. Plaintiff Impact Engineering, Inc. ("IE"), is a Washington State corporation, with its principal place of business in Kent, Washington State. Impact Engineering, Inc., is a wholly owned subsidiary of Plaintiff Flux Drive, Inc (FDI).

4. Plaintiff Tri-Tec Manufacturing, LLC, ("TT"), is a Washington State limited liability company, with its principal place of business in Kent, Washington State, and is owner of certain trade secret rights misappropriated by defendants in this lawsuit and is also licensee of certain trade secrets owned by plaintiff FDI and plaintiff FDL.

5. Plaintiff Philip Corbin III ("PC"), is a resident of Renton, Washington State. He is the President and Chief Executive Officer of Plaintiff's Flux Drive, Inc. and Impact Engineering, Inc. and a Manager-Member of Flux Drive, LLC.

6. Defendant Michael Troy Sparks ("TS"), a/k/a TROY SPARKS, is an individual, who resides in Loveland, Colorado, and on information and belief, is the sole Manager-Member of CMONSense Design, LLC, a Colorado limited liability company.

7. Defendant CMONSense Design LLC ("CD"), is a Colorado State limited liability company with principal offices in Loveland, Colorado.

8. Defendant John Qiang Rong ("JR"), is an individual, who resides in Lisle, Illinois, and on information and belief, is a (general or limited) partner in defendant Zyrcon Global Strategies, LLP.

9. Defendant Zyrcon Global Strategies, LLP (“ZC”), is an Illinois limited liability partnership, with principal offices in Lisle, IL.

10. Defendant Leigh Wang (“LW”), is an individual and the person listed as the general partner on the Zyrcon Global Strategies, LLP annual report filing with the Illinois Secretary of State, and on information and belief resides with defendant John Rong in Lisle, Illinois.

11. Defendant Ljjuan Zhao a/k/a “ Lora” (LZ), is an individual with a residence in Queens County, New York City, New York State, who, is a either a US citizen or possesses a permanent US Residency Card (a/k/a “Green Card”), on information and belief, is an employee and officer of PRD Technologies, Ltd, a Mainland China (Peoples Republic of China, hereinafter “PRC”) company, which is an entity that participated in the unlawful secretive solicitation and recruitment of TTM and FDI’s critical employee defendant Michael Troy Sparks.

**Jurisdiction And Venue**

12. This court has subject matter jurisdiction over Plaintiffs’ claims pursuant to 28 U.S.C. § 1332(a)(1) and (a)(2), because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. Jurisdiction also is proper under 28 U.S.C. § 1331, as Plaintiffs have asserted a federal claim for Defendants’ violation of the Federal Defend Trade Secrets Act (“DTSA”), 18 U.S.C. § 1836, *et seq*. This Court also has supplemental jurisdiction of the Plaintiffs’ Colorado law claims under 28 USC §1367, because said Colorado law claims are so related to claims in the action within such original federal jurisdiction that they form part of the same case or controversy.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Colorado District. Venue is also proper in this District pursuant to 28 U.S.C. § 1291(b)(3) because all Defendant Michael Troy Sparks is subject to the Court's personal jurisdiction with respect to this action, since said Defendant resides within the District.

**Statement Of Facts**

14. On information and belief, this action arises out of a fraudulent scheme and conspiracy commenced by Defendants TS, CD, JR, ZC, LW, and LZ on or before March 2020, when Defendant JR sought out and initiated contact with defendant TS, seeking to have, and did ultimately coordinate with all defendants to have TS sign a Master Service Agreement (MSA) on behalf of his China acquaintance known as Chongqing PRD Technology Corporation ("PRD") and its President, LiMing Jun (aka Lincoln Li).

15. Defendant JR, who holds a PhD in engineering from the University of Michigan, was the technical liaison between PRD Technologies Ltd (PRD), a Mainland China (PRC) company and Magnetic Drive Development and Venture LLC, a New York limited liability company (MV). MV and PRD entered into a Joint Research and Development Agreement for the development of a large power water-cooled adjustable speed drive unit which would be designed by plaintiff FDI, and then marketed and sold in China, Hong Kong and Singapore. Defendant JR approached defendant TS, who was a Senior Design Engineer for Plaintiff FDI and TTM, and who was only one of three individuals at FDI and TTM who had knowledge of, and had access to all, of Plaintiff FDL and FDI's secured technical proprietary information and trade secrets.

16. Immediately following the MSA being executed under direction of defendant JR, Defendant TS commenced working directly for PRD and received compensation, under the direction of defendant JR and ZC, and Defendant TS proceeded to transfer the critical intellectual property belonging to Plaintiffs' FDI, FDL, and TT; related to the Plaintiffs' ASD magnetic drive and FSC magnetic coupling products.
17. Defendant ZC, was both Defendant JR's and LW's company to "Provide business consulting services in management, mergers and acquisitions (M&A) and fiscal planning" and directly provided financial compensation to defendant TS as part of their management functions. Defendant LW coordinated the financial transactions with Defendant TS and ZC.
18. Defendant JR was then noted to be acting for PRD, and also for James Pi (now deceased), sole alter-ego Manager-Member of Magnetic Drive and Development Venture LLC (New York LLC), to whom plaintiff FDI was contracted to design and development a new larger water cooled ASD,  and JR was the direct supervisor to defendant TS; since his JR's background was in engineering, and he holds a Doctoral degree in the said topic.
19. Defendant JR is also known to have worked directly for James Pi (JP), and his company Magnetic Drive Development and Venture, LLC (MV) and/or his company Pi Capital Partners (PCP), as a consultant utilized for his engineering experience (i.e., holding a Doctoral Engineering Degree) in the noted subject matter.
20. Defendant JR was introduced to all the Plaintiffs during a meeting he attended in August of 2018, at FDI and TTM corporate offices, and he also met defendant TS during those technical project meetings.
21. Defendant JR was also known to be a consultant of JP, whom utilized his engineering experience (i.e., holding Doctoral Engineering Degree) in the noted subject matter as related

to MV and all efforts working with plaintiffs FDI and PC. As directed by JP, plaintiffs PC and FDI worked directly with defendant JR, as related to engineering project planning and efforts that were coordinated with MV and JP, and JP's China business associate, Chongqing PRD Technology Corporation ("PRD") and its President, LiMing Jun (aka Lincoln Li).

22. Based on defendant JR access to the August 2018 and later December 2018 meetings in Kent, WA, , JR was aware that critical Trade Secrets of the Plaintiffs 'Induction Rotor Technology' were to remain secret, and not be part of any plaintiffs' agreements to Transfer Patents or the Development and Manufacturing agreements with his other business associate JP, MV and PRD.

23. Since Defendant JR was completely aware of defendant TS position and technical knowledge at FDI, defendant JR, and his company, conspired with JP and PRD, and intentionally targeted defendant TS to gain access to ALL the FDL, FDI and TTM intellectual property.

24. Since defendant TS was an employee of Plaintiff FDI and TTM, and was the Senior Design Engineer for Plaintiff FDI and TTM, he was knowledgeable of and had access to all of Plaintiff FDI trade secrets, and he ultimately transferred ALL of Plaintiff FDI trade secrets for the ASD and the FSC products via defendant JR to his associates JP and PRD.

25. Defendant TS then conspired with all of the other defendants to intentionally breach his Employment and Confidentiality agreements with FDL and TTM, so that defendant TS would be further substantially compensated by defendant JR's business associate PRD. All of the defendants intentionally concealed TS's secret agreement with PRD from plaintiffs. Being unaware of TS's aforesaid wrongful actions, plaintiffs continued to employ defendant TS for another nineteen months until TS suddenly quit TTM on October 8, 2021, with TTS giving the reason for quitting that he did not want to transfer to another division within

plaintiff TTM, which had been then recently planned. Defendant TS made no comments about his signing any agreement in March 2020 with PRD in PRC. It was not until plaintiffs filed a lawsuit and obtained certain subpoenaed documents from defendant JR in April 2022, that plaintiffs became aware that defendant TS has signed the multi-year contract with PRD and that was coordinated and assisted by defendants JR, his Illinois business, and his partner in that business.

26. Therefore, plaintiffs then became aware in April 2022, that defendant TS not only had likely transferred plaintiffs confidential trade secrets that he was aware of when he signed the PRD contract in March 2020, but because he surreptitiously kept working for plaintiffs while he was also working for PRD, TS was able to send all of plaintiffs real-time confidential new designs, research and development secretly and contemporaneously to PRD in the PRC.

27. Defendant TS also negotiated a multi-year ongoing contract with PRD, signed by Michael Troy Sparks (Defendant TS) on February 2, 2022, for further development support and also a '3-year Exclusive Sales Rights' agreement with PRD for North, Central, and South America, with a first right to negotiate the years to follow; further demonstrating TS malicious intent to steal and misappropriate the FDI and FDL intellectual property; and unjustly enrich himself.

28. Defendant TS and Defendant JR coordinated the misappropriation of ALL of FDI and FDL's intellectual property; for their original ASD 'air-cooled' devices, their original FSC (magnetic smart coupling), their new 'liquid cooled' ASD technology, and FDI and FDL's new adjustable FSC.

29. It is now clear, that this entire scheme and conspiracy, to wrongfully obtain plaintiffs' confidential and proprietary information, know-how, and trade secrets, was a conspiracy and preplanned by all defendants, and all defendants participated in said wrongful scheme, and

therefore said acts and omission were intentional from the beginning on or before March 2020.

30. All of the defendants received compensation for their participation in this scheme. As a result, all of the defendants have been unjustly enriched.

31. Defendant TS, Defendant JR, and the Defendants' acquaintance in China, Chongqing PRD Technology Company, have now also reversed engineered the Plaintiff FDI and FDL's complete ASD magnetic drives and FSC magnetic couplings and are manufacturing them in PRC China and have access to the rest of the world for ongoing manufacturing, distribution and direct sales to the financial detriment of plaintiffs.

32. The Defendants, by devious means of fraud, and conspiracy, have ultimately stolen and misappropriated ALL of the Plaintiffs' valuable proprietary confidential product design and manufacturing information and trade secrets.

**COUNT I**

**FRAUDULENT CONCEALMENT AGAINST ALL DEFENDANTS**

**Colorado Common Law**

***Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D.Colo.2002)**

33. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

34. On information and belief, Defendants concealed a material existing fact, namely, that defendant Michael Troy Sparks, a critical employee of plaintiffs FDI and TTM who was among only three individuals who had access to said plaintiffs proprietary trade secrets, that in equity and good conscience should have been disclosed; knowledge of the part of

the defendants that such fact has been concealed from plaintiffs; that plaintiffs were ignorant of that said fact was being concealed by defendants; the intention that the concealment of said fact be acted upon; that plaintiffs acted upon said concealment by continuing to employ said MS while concurrently surreptitiously employed by PRD with the assistance and knowledge of all defendants, said concurrent employment allowing MS to misappropriate said plaintiffs trade secrets and continued improvements therefrom in real time, with defendants thereby suffering damages therefrom. represented numerous materials facts are more particularly set forth in herein, said material facts were untrue at the time they were made, the Defendants knew said material facts were untrue or under the circumstances were recklessly made, said representations were made with the intent to deceive and for the purpose of inducing Plaintiffs to act upon it, and by relying on said untrue representations and statements, the Plaintiffs have suffered substantial damages.

35. Plaintiffs have relied on Defendants' aforesaid concealment of said material fact, and Plaintiffs have suffered damages thereby, said damages to be determined at trial.

## <u>COUNT II</u>

## BREACH OF CONTRACT

## AGAINST DEFENDANT MICHAEL TROY SPARKS BREACHED FLUX DRIVE LLC'S OPERATING AGREEMENT

36. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

37. Defendant TS, signed a an Operating Agreement as a Member of plaintiff FDL.

38. Defendant TS, by his acts and omissions as further set forth herein, defendant TS has breached said Operating Agreement to the detriment of plaintiff FDL and its other Members.

**39.** By reason of the foregoing, the defendant TS has financially damaged the plaintiffs, and plaintiffs must be made whole and compensated in an amount to be determined at trial.

## COUNT III

## BREACH OF CONTRACT

## AGAINST DEFENDANT MICHAEL TROY SPARKS
## BREACH OF IP ASSIGNMENT AGREEMENT

40. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

41. Defendant TS executed an Intellectual Property Assignment Agreement with plaintiff FDL, wherein plaintiff assigned certain intellectual property rights to plaintiff FDL, and agreed to strict confidence in all magnetic devices he worked on, in consideration of his ownership percentage in plaintiff FDL.

42. As more particularly set forth herein, defendant TS breached said Intellectual Property Assignment Agreement by secretly signing a contract with PRD in March 2020 through TS's own company defendant Cmonsense Design LLC, wherein TS illegally delivered massive amounts of plaintiffs proprietary information and trade secrets related to plaintiffs' magnetic devices, including, but not limited to Adjustable Speed Drives (ASD), Smartcouplings (FSC), and New Air devices.

43. By reason of the foregoing, the defendants have financially harmed the plaintiffs, and plaintiffs must be made whole and compensated in amount to be determined at trial.

## COUNT IV

## BREACH OF CONTRACT-
## AGAINST DEFENDANT MICHAEL TROY SPARKS
## BREACH OF HIS EMPLOYMENT AGREEMENT WITH PLAINTIFF TRI-TEC MANUFACTURING LLC

44. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

45. Defendant TS executed several times, an Employment Agreement with plaintiff TTM, wherein TS agreed not to work for any other business in competition with TTM, ans also agreed to keep all information that TS worked on at TTM strictly confidential.

46. As more particularly set forth in the facts herein, defendant TS breached the terms and conditions of said Employment Agreement TS entered into with TTM.

47. Accordingly, Plaintiffs have been damaged thereby in an amount to be determined at trial.

## COUNT V

## MISAPPROPRIATION OF TRADE SECRETS

## AGAINST ALL DEFENDANTS

## Colorado Uniform Trade Secrets Act –
## Colorado Statutes Title 7 §§ 7-74-101 — 7-74-110

48. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

49. The Plaintiff FDI owned and possessed confidential and proprietary trade secret information, relating to its detailed design for its magnetic drives (ASD) and couplings (FSC). Said trade secrets are a compilation of plaintiffs proprietary and confidential information which plaintiffs have used in their businesses for many years and gives plaintiffs an opportunity to obtain advantage over Plaintiffs' competitors who do not know of said confidential information.

50. Plaintiffs took extensive measures to keep said confidential information secret by having a confidentiality agreement with defendants and related agreements with FD's team members, and limited password access to Plaintiffs' server-based information. Said secret information was compartmentalized, and only three critical personnel had access to the computer software vaults containing all of said confidential proprietary information. Defendant TS was one of these three individuals. Plaintiffs' trade secrets were developed over many years of work and said information could not otherwise be easily obtained by Defendants. Defendants jointly participated in an illegal plan to misappropriate said trade secrets of plaintiffs, and then use them for their own benefit.

51. Defendants have misappropriated said trade secrets and are now manufacturing unauthorized knockoffs of Plaintiffs' ASD magnetic drives and FSC magnetic couplings, together with the programming logic contained in plaintiff TTM's proprietary digitally controlled actuators, designed and produced by Plaintiff TTM. Accordingly, the Defendants have misappropriated valuable confidential and proprietary trade secrets of FDL, FDI and TTM, which has destroyed plaintiffs' ability to sell their own respective proprietary products in markets around the world. Therefore, defendants gave violated the Colorado Uniform Trade Secrets Act.

52. By reason of the forgoing, the Plaintiffs have been damaged and must be compensated for the damages and losses they have suffered in an amount to be determined at trial.

**COUNT VI**

**VIOLATION OF FEDERAL DEFENSE OF TRADE SECRETS ACT**

**AGAINST ALL DEFENDANTS - 18 USC §1836, et seq.**

53. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

54. The actions of Defendants as more particularly described herein constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 (“DTSA”), PL 114-153, May 11, 2016, 130 Stat 376, 18 U.S.C. § 1836 et seq.

55. The DTSA provides, in relevant part:

An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

56. The DTSA provides that “a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable…”

U.S.C. § 1836(b)(3)(A).

57. On information and belief, by engaging in the conduct described herein, the Defendant has intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or

proprietary information or knowledge of Plaintiff FD and Plaintiff TT, and Defendants continues and will continue to do so.

58. On information and belief, the Defendants have already, and inevitably will continue to use or disclose said Plaintiffs confidential trade secret information, thereby damaging Plaintiff's trade secrets value.

59. On information and belief, Defendants knowingly failed to protect plaintiffs trade secret information in violation of their duty of confidentiality, and said misappropriation of said trade secrets by Defendants was willful and malicious; therefore pursuant to the DTSA, said Plaintiffs are entitled to exemplary damages in an amount two times the amount of actual loss to said Plaintiffs plus Defendants' unjust enrichment, said amount in an amount to be determined at trial.

60. Plaintiffs FDL, FDI and TTM, also request an injunction issued by the Court enjoining all Defendants from using said confidential trade secret again and order Defendants to return all misappropriated stolen intellectual property, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to Plaintiffs. Plaintiffs also request that the Court issue an injunction to U.S. Customs and Border Protection, barring the import into the USA of any product that uses the wrongfully obtained plaintiffs' trade secrets by Defendants and Defendants mainland China acquaintance PRD. Further, that the Court issue an order to the United States Patent and Trademarks Office, declaring that any patent invalid issued to Defendants and to Defendants' mainland China acquaintance PRD, that uses plaintiffs misappropriated trade secrets.

**61.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

**<u>COUNT VII</u>**

**Civil Liability for a Conspiracy with Joint Liability**

**AGAINST ALL DEFENDANTS**

**Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995)**
**Colorado Statutes § 13-21-111.5(4)**

62. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

63. To state a claim for civil conspiracy in Colorado, a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995) (citation omitted).

64. On information and belief, all defendants consciously conspired and deliberately pursued a common plan or design to commit a tortious act; namely, conspired defraud all plaintiffs by fraudulently concealing the hiring of plaintiffs' FDI and TTM employee defendant TS, as is more particularly set forth herein, to have TS wrongfully misappropriate, steal, and convert to defendants own property, all of the historical and new intellectual property (i.e., confidential proprietary information and trade secrets) and know-how of Plaintiffs FDL, FDI and TTM, in order to benefit defendants themselves as well as their acquaintance in mainland China, PRD.

65. The evidence of a meeting of the minds be defendants is that defendant JR, and his partners and company emailed the wrongful PRD contract to defendant TS, thereby "stealing" critical employee TS from plaintiffs, and paying TS for his services of misappropriating plaintiffs trade secrets. Defendant JR and his partners and company gave TS a substantial bridge loan nearly contemporaneous to defendant TS (and his company) signing a multi-year services contract giving plaintiffs; intellectual property to defendants and ultimately to PRD in PRC.

66. On information and belief, all defendants were active participants in the commencement of, said ongoing fraud and scheme, as is more particularly set forth above in the relevant facts set forth herein, and in all of the other COUNTS for the above listed tortious acts.

**67.** On information and belief, all of the Defendants knew of, and participated in said fraudulent scheme and conspiracy.

**68.** Said wrongful acts by Defendants were knowing an intentional.

**69.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

## COUNT VIII

## UNJUST ENRICHMENT

## AGAINST ALL DEFENDANTS

**Colorado Common Law**
***DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo.1998)**
***Salzman v. Bachrach*, Col. Supreme Ct., 996 P.2d 1263 (2000)**

70. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

71. In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the *1266 benefit without paying. See DCB Constr. Co. v. Central City Dev. Co., 965 P.2d 115, 119-20 (Colo.1998).

72. On information and belief, as more particularly set forth herein, the defendants have all acted unfairly since plaintiffs' property rights have been misappropriated by the defendants, said property rights include, but are not limited to plaintiffs aforesaid confidential and proprietary trade secrets in plaintiffs' engineering detailed design of its high torque ASD magnetic drive units and plaintiffs' FSC magnetic couplings, for defendants' commercial advantage whereby defendants illegally gain the entire market for said magnetic drive and coupling units in PRC Mainland China, wherein Plaintiffs must be protected from Defendants' attempt to profit from the Plaintiffs' substantial expenditure of time, labor and talent.

73. As more particularly set forth herein, and on information and belief, defendants' aforesaid acts and omissions have been in bad faith, since plaintiffs relied on defendants personal assurances that they, and the entities they control would ensure that all confidential proprietary trade secret information would be kept confidential.

74. Defendants have financially benefitted from the aforesaid unjust enrichment.

**75.** As a consequence of the aforesaid unjust enrichment by defendants, the plaintiffs have been substantially damaged, and should be compensated for defendants unjust enrichment in an amount to be determined at trial.

**76.** Plaintiffs request that all defendants be ordered to return all of the intellectual property (proprietary, confidential information and trade secrets) stolen by defendants to plaintiffs, and that defendants all be enjoined from any further possession or use of said intellectual property.

**COUNT IX**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

**Colorado Common Law**
***Omaha & Grant Smelting & Ref. Co. v Tabor*, 21 P.95 (Colo. 1889)**
***Byron v York Inv. Co.*, 296 P.2d 742 (Colo. 1956)**
***Maryland Cas. Co. v Messina*, 874 P.2d1058 (Colo. 1994)**

77. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

78. As more particularly set forth herein, and on information and belief, all Defendants have wrongfully taken, and used, and exercised dominion over, all Plaintiffs' intellectual property (confidential proprietary information and trade secrets) without Plaintiffs' authorization by taking engineering drawings and reverse engineering Plaintiffs' ASD magnetic drive and FSC coupling units and digitally controlled actuators, and manufacturing "knock offs" in Mainland China (PRC). The Defendants' aforesaid acts were done without the authorization of plaintiffs.

**79.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

## PLAINTIFFS' JOINT PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A. That the Court find, adjudge and order that all Defendants are liable for fraudulent concealment by unlawfully concealing the material fact from plaintiffs that defendant Michael Troy Sparks had secretly signed a multi-year contract, through his single member LLC defendant Cmonsense Design LLC, with PRD, making said contract with knowledge, conspiring, planning, and coordination by all defendants being transmitted and coordinated to TS by defendant JR, while TS was still in the employ of plaintiffs FDI and TTM and was one of only three critical employees having access to all of plaintiffs compartmentalized proprietary information and trade secrets. This being part of a planned broad fraudulent scheme and conspiracy to steal from three United States companies, namely, plaintiffs FDL, FDI and TTM valuable proprietary confidential trade secrets and plaintiffs relied to their detriment on Defendants' fraudulent concealment, and therefore that that all defendants be ordered to pay all of Plaintiff's damages in amounts to be determined at trial.

B. That the Court find, adjudge and order that Defendant Michael Troy Sparks breached his employment agreement with plaintiff TTM, and that Plaintiff TTM be compensated in an amount to be determined at trial.

C. That the Court find, adjudge and order that defendant TS breached his Intellectual Property Assignment Agreement with plaintiff FDL, and that Plaintiff FDL be compensated in an amount to be determined at trial.

D. That the Court find, adjudge and order that defendant TS breached the terms, conditions and obligations set forth in the Operating Agreement of plaintiff Flux Drive LLC, and that plaintiff FDL be compensated in an amount to be determined at trial.

E. That the Court find, adjudge and order that defendants misappropriated all of plaintiff's trade secrets in violation of the Colorado Uniform Trade Secrets Act, and that plaintiffs be compensated in amount determined at trial, and that the Court further order that the Defendants return all misappropriated stolen intellectual property, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

F. That the Court find, adjudge and order that defendants misappropriated plaintiff's trade secrets in violation of the Federal Defend Trade Secrets Act [18 USC §1836], and that said misappropriation by defendants was willful and malicious, and accordingly that Defendants be ordered to pay plaintiffs exemplary damages under 18 USC §1836(3)(C) of twice the compensatory damages plaintiffs are entitled to.

G. Further that all defendants be temporarily and permanently enjoined from using plaintiffs' trade secrets in the future in any manner whatsoever pursuant to the DTSA, and the Court further order that the defendants return all misappropriated stolen intellectual property, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

**H.** That the Court find, adjudge and order that defendants are liable to plaintiffs under Colorado common law for Conversion,, and that defendants pay damages for said wrongful Conversion in an amount to be determined at trial, and that the Court further order that the defendants

return all converted property rightfully belonging to plaintiffs, and that defendants be ordered to pay all of plaintiffs' damages resulting from said Conversion in amounts to be determined at trial.

**I.** That the Court find, adjudge and order that all Defendants are liable under Colorado Common Law for Civil Conspiracy and under Colorado Statutes § 13-21-111.5(4) Civil Liability among all Defendants, since defendants consciously conspired and deliberately pursued a common plan or design to commit a tortious act; namely, to deceive and defraud plaintiffs in order to wrongfully steal, misappropriate, and convert plaintiffs confidential and proprietary information and trade secrets for defendants own unjust enrichment, benefit and advantage, and that defendants be ordered to pay all of plaintiffs' damages in amounts to be determined at trial.

J. That the Court find, adjudge and order that defendants have unjustly enriched themselves, to the detriment to plaintiffs, and that plaintiffs be compensated in amount determined at trial, and that the Court further order that the defendants return all misappropriated stolen intellectual property, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

K. That the Court find, due to the particularly malicious, willful, wanton, egregious, wrongful and illegal acts by all defendants herein, by defrauding and stealing and misappropriating valuable and critical trade secrets from small U.S. engineering and technical firms Flux Drive, LLC, Flux Drive, Inc., Impact Engineering, Inc., and Tri-Tec Manufacturing, Inc., and then wrongfully arranging for, and facilitating, through fraudulent concealment, the wrongful transfer of said plaintiffs' substantial and critical trade secrets, to said defendants

acquaintance in Mainland China PRC, namely PRD, that that the Court therefore adjudge and order, in order to punish to defendants and to dissuade similarly situated persons as defendants from committing similar acts, that all of defendants pay punitive damages to Plaintiffs, in an amount to be determined at trial.

L. That the Court find, adjudge and order that pre-judgement and post-judgement interest on all amounts be paid to Plaintiffs.

M. That the Court find, adjudge and order that defendants pay plaintiffs' reasonable attorney's fees, expenses and costs.

N. That the Court find that the Defendants are liable for wrongfully soliciting key members of plaintiffs FDI and TTM team members in an attempt to steal, misappropriate and convert plaintiffs FD and TT's intellectual property, and that defendants be enjoined from soliciting, hiring, employing or otherwise engaging Plaintiffs' key team members for a period of five (5) years.

O. Plaintiffs also request that the Court issue an injunction and or order to U.S. Customs and Border Protection, barring the import into the USA of any product that uses the wrongfully obtained plaintiffs' trade secrets by Defendants and Defendants mainland China acquaintance PRD. Further, that the Court issue an order to the United States Patent and Trademarks Office, declaring that any patent invalid issued to Defendants and to Defendants' mainland China acquaintance PRD, that uses plaintiffs misappropriated trade secrets.

P. That the Court award all plaintiffs such other relief as the Court deems just and equitable.

Dated, this the 8th day of October 2024.

_s/Steven J. Miller____________________
Steven J. Miller, Esq.
Email: steve@miller-law-offices.com
THE MILLER LAW OFFICES, PLC
12724 Gran Bay Pkwy W. – Suite 410
Jacksonville, FL 32258
Tel.: 305-803-5168
Fax: 305-675-4605
*Attorney for Plaintiffs*