IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02784-STV

-------------------------------------------------------------------X
FLUX DRIVE, INC,
FLUX DRIVE, LLC
IMPACT ENGINEERING, INC.,
TRI-TEC MANUFACTURING, LLC,
and PHILIP CORBIN III

Plaintiffs,

vs.

MICHAEL TROY SPARKS
CMONSENSE DESIGN, LLC,
JOHN QIANG RONG,
ZYRCON GLOBAL STRATEGIES, LLP,
LEIGH WANG, and
LIJUAN ZHAO a/k/a LORA ZHAO

Defendants
-------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT [per Fed. R. Civ. Pro. 15(a)(1)(B)]**

**(Jury Trial Demanded)**

NOW COME Plaintiffs FLUX DRIVE LLC, a Delaware limited liability company (FDL) , FLUX DRIVE, INC., a Washington State corporation ("FDI"), IMPACT ENGINEERING, INC., a Washington State corporation ("IE"), TRI-TEC MANUFACTURING, LLC, a Washington State limited liability company ("TTM"), and PHILIP CORBIN III ("PC"), an individual, by and through their undersigned counsel, and pursuant to Fed. R. Civ. Pro. 15(a)(1)(B), and in Response to defendants John Q. Rong, Leigh Wang and Zyrcon Global Strategies LLP Fed. R.

Civ. Pro. two Motions to Dismiss (Dkt-34 and Dkt-35), hereby files their First Amended Complaint as a matter of right, within 21 days of the defendants John Q. Rong, Leigh Wang and Zyrcon Global Strategies LLP filing their Rule 12(b) Motions to Dismiss for Lack of Personal Jurisdiction (Dkt-34), and for Failure to State a Claim Upon Which Relief Can be Granted (Dkt-35), and allege the following for plaintiffs' First Amended Complaint:

**Parties**

1. Plaintiff Flux Drive, Inc. ("FDI"), is a Washington State corporation, with its principal place of business in Kent, Washington State. FDI is owner of certain trade secrets misappropriated by defendants in this lawsuit, and FDI is the licensee of other trade secrets misappropriated by defendants in this lawsuit.
2. Plaintiff Flux Drive, LLC is a Delaware limited liability company (FDL), has a principal office in Jacksonville, Florida, and is owner of certain trade secret rights licensed jointly to plaintiff FDI and plaintiff TTM.
3. Plaintiff Impact Engineering, Inc. ("IE"), is a Washington State corporation, with its principal place of business in Kent, Washington State. Impact Engineering, Inc., is a wholly owned subsidiary of Plaintiff Flux Drive, Inc (FDI).
4. Plaintiff Tri-Tec Manufacturing, LLC, ("TT"), is a Washington State limited liability company, with its principal place of business in Kent, Washington State, and is owner of certain trade secret rights misappropriated by defendants in this lawsuit and is also licensee of certain trade secrets owned by plaintiff FDI and plaintiff FDL.

5. Plaintiff Philip Corbin III ("PC"), is a resident of Renton, Washington State. He is the President and Chief Executive Officer of Plaintiff's Flux Drive, Inc. and Impact Engineering, Inc. and a Manager-Member of Flux Drive, LLC.

6. Defendant Michael Troy Sparks ("TS"), a/k/a TROY SPARKS, is an individual, who resides in Loveland, Colorado, and on information and belief, is the sole Manager-Member of CMONSense Design, LLC, a Colorado limited liability company.

7. Defendant CMONSense Design LLC ("CD"), is a Colorado State limited liability company with principal offices in Loveland, Colorado.

8. Defendant John Qiang Rong ("JR"), is an individual, who resides in Lisle, Illinois, is a limited partner of defendant Zyrcon Global Strategies, LLP.

9. Defendant Zyrcon Global Strategies, LLP ("ZC"), is an Illinois limited liability partnership, with principal offices in Lisle, IL.

10. Defendant Leigh Wang ("LW"), is an individual and the person listed as the general partner on the Zyrcon Global Strategies, LLP annual report filing with the Illinois Secretary of State, and on information and belief resides with defendant John Rong in Lisle, Illinois.

11. Defendant  Ljjuan Zhao a/k/a " Lora" (LZ), is an individual with a residence in Worcester County, City of Worcester, Massachusetts, who, is a either a US citizen or possesses a permanent US Residency Card (a/k/a "Green Card"), on information and belief, is an employee, officer and agent of PRD Technologies, Ltd, a Mainland China (Peoples Republic of China, hereinafter "PRC") company, which is an entity that participated in the unlawful intentional egregious secretive solicitation and recruitment of TTM and FDI's critical employee defendant Michael Troy Sparks (TS), and participated in the misappropriation of plaintiffs' trade secrets, along with other tortious conduct.

## Jurisdiction And Venue

12. This court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a)(1) and (a)(2), because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. Jurisdiction also is proper under 28 U.S.C. § 1331, as Plaintiffs have asserted a federal claim for Defendants' violation of the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*. This Court also has supplemental jurisdiction of the Plaintiffs' Colorado law claims under 28 USC §1367, because said Colorado law claims are so related to claims in the action within such original federal jurisdiction that they form part of the same case or controversy.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Colorado District. Venue is also proper in this District pursuant to 28 U.S.C. § 1291(b)(3) because all Defendant Michael Troy Sparks is subject to the Court's personal jurisdiction with respect to this action, since said Defendant resides within the District.

## Statement Of Facts

**14.** This action arises out of a fraudulent scheme and conspiracy commenced by Defendants TS, CD, JR, ZC, LW, and LZ on or before March 2020, when Defendant JR sought out and initiated contact with defendant TS, seeking to have, and did ultimately coordinate with all defendants to have TS sign a Master Service Agreement (MSA) on behalf of his China acquaintance known as Chongqing PRD Technology Corporation ("PRD") and its President, LiMing Jun (aka Lincoln Li), and also on behalf of Mr. James Pi, principal officer of Magnetic Development and Venture LLC, a New York limited liability company,

(defendants in a related case EDNY 1:21-cv-06573-JRC), who defendant JR reported to during the period August 2018 to March 2022. Accordingly, defendant JR's, his company ZC's, and ZC's general partner defendant LW contacts with defendant TS have been continuous and systematic for over 3.5 years, during said 3.5 year time period defendant TS continuously reporting to defendant JR on plaintiffs' trade secret technical and other matters, wherein as a consequence of defendant TS transmitting all of plaintiffs misappropriated trade secrets through his supervisor defendant JR, defendant JR (his company and its general partner LW) wrongfully acquired and disclosed plaintiffs' misappropriated trade secrets, and during said time period defendant TS continuously communicating with defendant LZ on related trade secret misappropriation matters, thereby showing that defendants JR and LZ were continuously transacting business within Colorado under Colorado Statutes § 13-1-124 and subjecting defendant JR and LZ to the personal jurisdiction of the District of Colorado. Further, all defendants received compensation from PRD, and others, for their support and efforts in this conspiracy to secretly misappropriate plaintiffs' trade secrets. Said compensation was received at least during the period August 2018 to March 2022. Therefore, all defendants were unjustly enriched.

15. Defendant JR, who holds a PhD in engineering from the University of Michigan, was the and authorized agent of MV and James Pi and was also the technical liaison between PRD Technologies Ltd (PRD), a Mainland China (PRC) company and Magnetic Drive Development and Venture LLC, a New York limited liability company (MV) whose principal officer was James Pi (now deceased) is a defendant (now his Estate) in the related Case in USDC-EDNY Case No. 1:21-cv-06753-JRC. MV and PRD entered into a Joint Research and Development Agreement for the development of a large power water-cooled

adjustable speed drive unit which would be designed by plaintiff FDI, and then marketed and sold in China, Hong Kong and Singapore, with certain proprietary trade secrets being retained by plaintiffs and the related proprietary parts made from said trade secrets, being made in the USA at plaintiffs' facilities, and by plaintiffs' personnel. Defendant JR, as an engineer, reported to said MV principal officer James Pi, and was James Pi's authorized agent for technical matters between plaintiffs, MV and PRD. As James Pi's personal technical agent, defendant knew that all of the technical information being exchanged among plaintiffs, MV. James Pi, and PRD were proprietary and strictly confidential. Defendant JR was very involved with technical matters between MV and PRD, and as James Pi's agent had the same duties as James Pi to maintain confidentiality of all engineering documents. Defendant JR, given his PhD in engineering, was able to determine, over a few months of contact with plaintiffs, which of plaintiffs' employees would likely have access to all of plaintiffs' trade secrets and to approach said person. In January 2020, defendant JR, with the knowledge of agreement of PRD, defendant LZ, defendants ZC and LW (LW as general partner of ZC authorized the initial funding to knowingly wrongfully soliciting defendant TS into the unlawful secret plan)  and James Pi (principal officer of MV, who was a Joint Venture Partner with plaintiff FDI), and with the agreed goal of defendant JR secretly soliciting defendant TS from plaintiffs, unlawfully and overtly approached defendant TS with the secret plan, in furtherance of the unlawful secret plan. Defendant TS was a Senior Design Engineer for Plaintiff FDI and TTM, and who was only one of three individuals at FDI and TTM who had knowledge of, and had access to all, of Plaintiff FDL and FDI's secured technical proprietary information and trade secrets. This then led to defendant JR, while he was still continuously communicating with plaintiffs under the Joint Development

Agreements as was normal, to secretly transmit a Master Services Agreement to defendant TS, said Agreement providing for defendant TS to concurrently secretly misappropriate plaintiffs' trade secrets and give them through defendant JR to PRD. The conspiracy to secretly steal a critical employee of plaintiffs, while defendant TS was concurrently and employee of plaintiffs for 19 months, allowed defendants to not only misappropriate whatever trade secrets plaintiffs had as of March 2020, but also all of plaintiffs' new trade secrets as they were developed during that 19 months secret concurrent employment period.

16. Immediately following the MSA being executed under direction of defendant JR, Defendant TS commenced working directly for PRD and received compensation from PRD in PRC, said work being coordinated by defendant LJ an employee of PRD, and under the direction of defendant JR and defendant ZC; with defendants JR, LW and ZC facilitating the illegal transfer of plaintiffs' trade secrets from defendant TS to PRD, providing bridge financing to aid and abet this unlawful secretive concealed activity. Illinois law requires that one of the partners of ZC must be a general Partner and one partner must be a limited partner. Defendant LW was the General Partner of ZC by representing she had general partner authority by signing the annual LLP renewals with the Illinois Secretary of State. Defendant LW's name appears as authorized wire sender on wire transfer records for transfers of over $20,000 from defendant ZC's Illinois Bank Accounts to defendants' TS and CS's bank accounts in Colorado; accordingly, defendants JR, LW and ZC have purposely availed themselves of the jurisdiction of Colorado, and are subject to personal jurisdiction of the District of Colorado under Colorado Statutes § 13-1-124. This occurred near contemporaneously to defendant TS signing said secretive MSA with PRD in March 2020, said MSA given to defendant TS by defendant JR. Defendant TS then proceeded to transfer

the critical trade secrets belonging to Plaintiffs' FDI, FDL, and TT, with full knowledge of defendant JR, continuously for the period March 2020 to October 2021, related to the Plaintiffs' ASD magnetic drive and FSC magnetic coupling products to defendant LJ's employer PRD in PRC. Defendants have all been unjustly enriched by said intentional unlawful acts and plaintiffs have all been damaged thereby.

17. Defendant JR's and LW, together with their Illinois company defendant ZC, knowingly and wrongfully acted as intermediaries for the secret solicitation of defendant TS to be contracted by PRD, by and through defendant LJ, who is an employee of said PRD in PRC, and knowingly, wrongfully, and intentionally concealing the information from plaintiffs, while defendant TS remained working for plaintiffs for another 19 months, directly provided financial compensation to defendant TS as part of their management functions. Defendants JR, LW, and ZC directly aided, abetted and coordinated the financial transactions between PRD's employee agent LJ with Defendant TS in the United States, all while defendant TS was illegally transferring plaintiffs' trade secrets to PRD in China. Plaintiff FDI is a Joint Venture Partner/Member of MV with said James Pi. James Pi personally introduced defendant JR to plaintiffs at a meeting at plaintiffs' facilities in Kent, WA, in August 2018. James Pi said JR, in JR's presence, that he was his authorized agent and representative on all technical matters in the development project, subjecting John Rong to the same fiduciary duties to plaintiff FDI, as James Pi and MV did under the Joint Development Agreements, and defendant JR, as authorized agent for James Pi also had the same duties of confidentiality as James Pi, MV and PRD did under the Joint Development Agreements.

18. Defendant JR secretly acted on behalf of James Pi, MV and PRD, intentionally secretly bypassing the knowledge of plaintiffs and contractual requirements and duties set forth in

FDI's MV Joint Venture Agreement with James Pi (now deceased), sole Manager-Member (and personally the alter-ego of) of Magnetic Drive and Development Venture LLC (New York LLC), to whom plaintiff FDI was contracted to design and develop a new larger water cooled ASD. Further, defendant TS secretly, and unbeknownst to plaintiffs, directly reported to defendant JR illegally transferring plaintiffs trade secrets from at least March 2020 to October 2021.

19. Defendant JR is also known to have worked directly for said James Pi (JP), and his company Magnetic Drive Development and Venture, LLC (MV) and/or his company Pi Capital Partners (PCP), as a consultant utilized for his engineering experience (i.e., holding a Doctoral Engineering Degree) in the noted subject matter.

20. Defendant JR was introduced to all the Plaintiffs during a meeting he attended in August of 2018, at FDI and TTM corporate offices, and he also met defendant TS during those technical project meetings.

21. Defendant JR was also known to be a consultant of JP, whom utilized his engineering experience (i.e., holding Doctoral Engineering Degree) in the noted subject matter as related to MV and all efforts working with plaintiffs FDI and PC. As directed by JP, plaintiffs PC and FDI worked directly with defendant JR, as related to engineering project planning and efforts that were coordinated with MV and JP, and JP's China business associate, Chongqing PRD Technology Corporation ("PRD") and its President, LiMing Jun (aka Lincoln Li).

22. Based on defendant JR's access to the August 2018 and later December 2018 meetings in Kent, WA, , JR was aware that critical Trade Secrets of the Plaintiffs 'Induction Rotor Technology' were to remain secret, and not be part of any plaintiffs' agreements to Transfer

Patents or the Development and Manufacturing agreements with his other business associate JP, MV and PRD.

23. Since Defendant JR was completely aware of defendant TS position and technical knowledge and critical employee at FDI, defendant JR, and his company Zyrcon Global Strategies LLP (ZC) , conspired with JP and PRD, and intentionally targeted defendant TS to gain access to ALL of plaintiffs' FDL, FDI and TTM proprietary trade secrets, and defendant JR, was subject to the same duties of loyalty and confidentiality as the MV Joint Venture Partner James Pi, since he was James Pi's authorized agent.

24. Since defendant TS was an employee of Plaintiff FDI and TTM, and was the Senior Design Engineer for Plaintiff FDI and TTM, he was knowledgeable of and had access to all of Plaintiff FDI trade secrets, and he ultimately transferred ALL of Plaintiff FDI trade secrets for the ASD and the FSC products via defendant JR to his associates JP and PRD. Defendants JR and LZ were aware of defendant TS's access to plaintiffs' trade secrets.

25. Defendant TS then conspired with all of the other defendants to intentionally breach his Employment and Confidentiality agreements with FDL and TTM, so that defendant TS would be further be substantially compensated by defendant JR's business associate PRD located in Mainland China with the knowledge of said James Pi, in order to bypass the contractual obligations James Pi, MV and PRD had to plaintiff FDI. All of the defendants intentionally concealed TS's secret agreement with PRD from plaintiffs. Defendants TS and JR were under duties to disclose that information to plaintiffs. Being aware of TS's aforesaid wrongful actions, defendants brokered and arranged for defendant TS to be continually and secretly employed, unbeknownst to plaintiffs, for another nineteen months until TS suddenly quit plaintiff TTM on October 8, 2021, without notice, with defendant TS giving the reason

for quitting TTM that he did not want to transfer to another division within plaintiff TTM, which had been then recently planned. Defendants made no comments to plaintiffs about TS signing any agreement in March 2020 with PRD in PRC. It was not until plaintiffs filed a lawsuit in USDC-EDNY in November 2021, and obtained certain subpoenaed documents from defendant JR in April 2022, that plaintiffs became aware that defendant TS had signed the multi-year contract with PRD and that contract having been coordinated and assisted by defendant JR, his Illinois business defendant ZC, his general partner in that business defendant LW, and LJ of PRD.

26. Therefore, plaintiffs then became aware in April 2022, that defendant TS not only had likely transferred plaintiffs confidential trade secrets that he was aware of when he signed the PRD contract in March 2020, but because he surreptitiously kept working for plaintiffs while he was also working for PRD, TS was able to send all of plaintiffs real-time confidential new designs, research and development secretly and contemporaneously to PRD in the PRC. Defendants JR, ZC, LW and LZ were fully aware of, and conspired with defendant TS, in TS's aforesaid illegal activity.

27. Defendant TS also negotiated a multi-year ongoing contract with PRD by and through PRD's employee agent defendant LJ, signed by Michael Troy Sparks (Defendant TS) on February 2, 2022, for further development support and also a '3-year Exclusive Sales Rights' agreement with PRD for exclusive distributed of plaintiffs' ASD and FSC magnetic products in North, Central, and South America, with a first right to negotiate the years to follow; further demonstrating all defendants complicity in defendant TS's intentional malicious intent to steal and misappropriate the FDI and FDL trade secrets; and unjustly enrich himself.

28. All defendants knowingly and secretly conspired, aided, abetted, facilitated and coordinated the misappropriation of ALL of FDI and FDL's trade secrets; for their original ASD 'air-cooled' devices, their original FSC (magnetic smart coupling), their new 'liquid cooled' ASD technology, and FDI and FDL's new adjustable FSC.

29. It is now clear, that this entire scheme and conspiracy, to wrongfully obtain plaintiffs' confidential and proprietary information, know-how, and trade secrets, was a conspiracy and pre-planned by all defendants, and all defendants participated in said wrongful scheme, and therefore said acts and omission were intentional from the beginning on or before March 2020. Defendants TS, JR and LZ were under a duty to disclose this wrongful acts by defendant TS to plaintiffs, under the Joint Development Agreements between/among FDI, MV (James Pi), and PRD.

30. All of the defendants received compensation for their participation in this scheme. As a result, all of the defendants have been unjustly enriched.

31. All defendants have benefitted and been unjustly enriched by PRD, who have used said misappropriated trade secrets belonging to plaintiffs FDI, FDL and TTM, and are now making, offering for sale, selling and using, plaintiff FDI and FDL's complete ASD magnetic drives and FSC magnetic couplings and are manufacturing them in PRC China and have access to the rest of the world for ongoing manufacturing, distribution and direct sales to the financial detriment of plaintiffs.

32. The Defendants, by devious means of fraudulent concealment, and conspiracy, have ultimately stolen and misappropriated ALL of the Plaintiffs' valuable proprietary confidential product design and manufacturing information and trade secrets. Said misappropriation of plaintiff FDI, FDL and TTM's trade secrets was clearly pre-planned by all defendants,

intentional egregious conduct calling for plaintiffs to receive compensatory unjust enrichment damages, plus three times said compensatory damages under Colorado punitive damages law, and two times the unjust enrichment compensatory damages under Federal law (Defend Trade Secrets Act 18 USC 1836), and reasonable attorneys fees.

## COUNT I

## FRAUDULENT CONCEALMENT AGAINST ALL DEFENDANTS

### Colorado Common Law

***Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175 (D.Colo.2002)**

33. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

34. Defendants, all under a duty to disclose any wrongful transfer of plaintiffs trade secrets (JR because he was an authorized agent of James Pi/MV who had Joint Venture Partner duties; ZC because it was a partnership enabling the misappropriation of said trade secrets through funding to defendant TS; LW because she is the general partner of ZC and who authorized said funding to TS; and LZ as an employee of PRD and spouse of PRD's president Liming Jung) to plaintiffs, JR was a partner with said knowledge of said duties, concealed a material existing fact, namely, that defendant Michael Troy Sparks (TS), a critical employee of plaintiffs FDI and TTM who was among only three individuals who had access to said plaintiffs proprietary trade secrets, that in equity and good conscience said defendants should have disclosed to plaintiffs; all defendants knew that that such fact that TS had commenced concurrently secretly working for PRD transferring plaintiffs' trade secrets, and participated in concealing this fact from

plaintiffs; all defendants knew that plaintiffs were ignorant of that fact defendants were concealing TS wrongfully working for PRD while transferring plaintiffs trade secrets to PRD; the defendants, by their aforesaid acts and omissions clearly intended that the concealment of said fact be acted upon by plaintiffs; that plaintiffs acted upon said concealment by continuing to employ defendant TS, while TS being concurrently secretly employed by PRD, as aided, abetted and facilitated by defendants JR, LW, ZC and LJ, said concurrent employment allowing defendant TS to misappropriate said plaintiffs trade secrets and continued improvements therefrom in real time, with defendants thereby suffering damages therefrom. Accordingly, the plaintiffs have suffered substantial damages.

35. Plaintiffs have relied on Defendants' aforesaid concealment of said material fact, and Plaintiffs have suffered damages thereby, said damages to be determined at trial.

## COUNT II

### BREACH OF CONTRACT

### AGAINST DEFENDANT MICHAEL TROY SPARKS BREACHED FLUX DRIVE LLC'S OPERATING AGREEMENT

36. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

37. Defendant TS, signed a an Operating Agreement as a Member of plaintiff FDL.

38. Defendant TS, by his acts and omissions as further set forth herein, defendant TS has breached said Operating Agreement to the detriment of plaintiff FDL and its other Members.

**39.** By reason of the foregoing, the defendant TS has financially damaged the plaintiffs, and plaintiffs must be made whole and compensated in an amount to be determined at trial.

## COUNT III

## BREACH OF CONTRACT

## AGAINST DEFENDANT MICHAEL TROY SPARKS BREACH OF IP ASSIGNMENT AGREEMENT

40. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

41. Defendant TS executed an Trade secrets Assignment Agreement with plaintiff FDL, wherein plaintiff assigned certain trade secrets rights to plaintiff FDL, and agreed to strict confidence in all magnetic devices he worked on, in consideration of his ownership percentage in plaintiff FDL.

42. As more particularly set forth herein, defendant TS breached said Trade secrets Assignment Agreement by secretly signing a contract with PRD in March 2020 through TS's own company defendant Cmonsense Design LLC, wherein TS illegally delivered massive amounts of plaintiffs proprietary information and trade secrets related to plaintiffs' magnetic devices, including, but not limited to Adjustable Speed Drives (ASD), Smartcouplings (FSC), and New Air devices.

43. By reason of the foregoing, the defendants have financially harmed the plaintiffs, and plaintiffs must be made whole and compensated in amount to be determined at trial.

## COUNT IV

## BREACH OF CONTRACT- AGAINST DEFENDANT MICHAEL TROY SPARKS

**BREACH OF HIS EMPLOYMENT AGREEMENT WITH PLAINTIFF TRI-TEC MANUFACTURING LLC**

44. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

45. Defendant TS executed several times, an Employment Agreement with plaintiff TTM, wherein TS agreed not to work for any other business in competition with TTM, ans also agreed to keep all information that TS worked on at TTM strictly confidential.

46. As more particularly set forth in the facts herein, defendant TS breached the terms and conditions of said Employment Agreement TS entered into with TTM.

47. Accordingly, Plaintiffs have been damaged thereby in an amount to be determined at trial.

**<u>COUNT V</u>**

**MISAPPROPRIATION OF TRADE SECRETS**

**AGAINST ALL DEFENDANTS**

**Colorado Uniform Trade Secrets Act –**
**Colorado Statutes Title 7 §§ 7-74-101 — 7-74-110**

48. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

49. Plaintiffs FDI and FDL owned and possessed confidential and proprietary trade secret information, relating to its detailed design for its magnetic drives (ASD) and couplings (FSC). Said trade secrets are a compilation of plaintiffs proprietary and confidential information which plaintiffs have used in their businesses for many years and gives

plaintiffs an opportunity to obtain advantage over Plaintiffs' competitors who do not know of said confidential information.

50. Plaintiffs took extensive measures to keep said confidential information secret by having confidentiality agreements with defendants and with plaintiffs' team members, and limited password access to Plaintiffs' server-based information. Said secret information was compartmentalized, and only three critical personnel had access to the computer software vaults containing all of said confidential proprietary information. defendant TS was one of these three individuals. Plaintiffs' trade secrets were developed over many years of work and said information could not otherwise be easily obtained by defendants. As a result of the contract that defendants JR transmitted to TS, and that defendants ZC and LW financially facilitated, and defendant LZ facilitated and enabled through email communications of actual trade secret drawings, defendants knowingly and intentionally jointly participated in an illegal conspiracy to misappropriate said trade secrets of plaintiffs, with said defendants knowing that said trade secrets were bring disclosed by defendant TS through defendants to PRD and without plaintiffs' consent, said defendants knowing that said trade secrets were improperly misappropriated by defendant TS, and then use said misappropriation for defendants' financial own benefit. All defendants were financially compensated for their aforesaid acts.

51. Defendants have misappropriated said trade secrets, and defendants have benefitted from said misappropriation since PRD is manufacturing unauthorized knockoffs of plaintiffs' ASD magnetic drives and FSC magnetic couplings, together with the programming logic contained in plaintiff TTM's proprietary digitally controlled actuators, designed and produced by plaintiff TTM. Accordingly, the defendants have misappropriated valuable

confidential and proprietary trade secrets of FDL, FDI and TTM, which has destroyed plaintiffs' ability to sell their own respective proprietary products in markets around the world. Defendants' wrongful acts have diluted the relevant markets with "knockoffs". Therefore, defendants violated the Colorado Uniform Trade Secrets Act.

52. By reason of the forgoing, the Plaintiffs have been damaged and must be compensated for the damages and losses they have suffered in an amount to be determined at trial.

**<u>COUNT VI</u>**

**VIOLATION OF FEDERAL DEFENSE OF TRADE SECRETS ACT**

**AGAINST ALL DEFENDANTS - 18 USC §1836, et seq.**

53. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

54. The actions of defendants as more particularly described herein constitute violations of one or more provisions of the Defend Trade Secrets Act of 2016 ("DTSA"), PL 114-153, May 11, 2016, 130 Stat 376, 18 U.S.C. § 1836 et seq.

55. The DTSA provides, in relevant part:

An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b)(1).

56. The DTSA provides that "a court may grant an injunction – to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable…"

U.S.C. § 1836(b)(3)(A).

57. On information and belief, by engaging in the conduct described herein, the defendants have intentionally, willfully and maliciously misappropriated, threatened to misappropriate, misused, revealed and disclosed trade secrets and/or confidential or proprietary information or knowledge of plaintiffs FDI, FDL and TTM, and all defendants have been financially enriched therefrom.

58. On information and belief, the defendants have already, and inevitably will continue to use or disclose said plaintiffs confidential trade secret information, thereby damaging plaintiffs' trade secrets value.

59. On information and belief, all defendants knowingly failed to protect plaintiffs trade secret information in violation of their duties of confidentiality, and said misappropriation of said trade secrets by defendants was willful and malicious; therefore pursuant to the DTSA, said Plaintiffs are entitled to exemplary damages in an amount two times the amount of actual loss to said Plaintiffs plus Defendants' unjust enrichment, said amount in an amount to be determined at trial.

60. Plaintiffs FDL, FDI and TTM, also request an injunction issued by the Court enjoining all defendants from using said confidential trade secret again and order defendants to return all misappropriated stolen trade secrets, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs. Plaintiffs also request that the Court issue an injunction to U.S. Customs and Border Protection, barring the import into the USA of any product that uses the wrongfully obtained plaintiffs' trade secrets by Defendants and Defendants mainland China acquaintance PRD. Further, that the Court issue an order to the United States Patent and Trademarks Office, declaring that any

patent invalid issued to Defendants and to Defendants' mainland China acquaintance PRD, that uses plaintiffs misappropriated trade secrets.

**61.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

**COUNT VII**

**Civil Liability for a Conspiracy with Joint Liability**

**AGAINST ALL DEFENDANTS**

**Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995)**
**Colorado Statutes § 13-21-111.5(4)**

62. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

63. To state a claim for civil conspiracy in Colorado, a plaintiff must allege: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." Nelson v. Elway, 908 P.2d 102, 106 (Colo. 1995) (citation omitted).

64. On information and belief, all defendants knowingly and consciously conspired and deliberately pursued a common plan or design to commit a tortious act;

namely, defendants conspired to defraud all plaintiffs by fraudulently concealing the hiring of plaintiffs' FDI and TTM employee defendant TS, as is more particularly set forth herein, to have TS wrongfully misappropriate, steal, and convert to defendants own property, all of the historical and new trade secrets (i.e., confidential proprietary

information and trade secrets) and know-how of plaintiffs FDL, FDI and TTM, in order to benefit defendants themselves as well as their acquaintance in mainland China, PRD.

65. The evidence of a meeting of the minds be defendants is that defendant JR, and his partner LW and company ZC wrongfully emailed the PRD contract to defendant TS, thereby “stealing” critical employee TS from plaintiffs, and paying TS for his services of misappropriating plaintiffs trade secrets. Defendants JR, LW and ZC authorized and issued defendant TS a substantial bridge loan nearly contemporaneous to defendant TS and Cmonsense Design LLC, signing a multi-year services contract with PRD in China, which facilitated defendant TS giving plaintiffs’ trade secrets to defendants and ultimately to PRD in PRC.

66. All defendants were active participants in the commencement of, said ongoing fraud and scheme, as is more particularly set forth above in the relevant facts set forth herein, and in all of the other COUNTS for the above listed tortious acts.

**67.** As more particularly set forth in the facts recited above, all of the Defendants knew of, and participated in said fraudulent scheme and conspiracy.

**68.** Said wrongful acts by defendants were knowing an intentional.

**69.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

## COUNT VIII

## UNJUST ENRICHMENT

## AGAINST ALL DEFENDANTS

**Colorado Common Law**
***DCB Constr. Co. v. Central City Dev. Co.*, 965 P.2d 115, 119-20 (Colo.1998)**

***Salzman v. Bachrach,* Col. Supreme Ct., 996 P.2d 1263 (2000)**

70. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

71. In Colorado, a plaintiff seeking recovery for unjust enrichment must prove: (1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying. See DCB Constr. Co. v. Central City Dev. Co., 965 P.2d 115, 119-20 (Colo.1998).

72. On information and belief, as more particularly set forth herein, the defendants have all acted unfairly since plaintiffs' property rights have been misappropriated by the defendants, said property rights include, but are not limited to plaintiffs aforesaid confidential and proprietary trade secrets in plaintiffs' engineering detailed design of its high torque ASD magnetic drive units and plaintiffs' FSC magnetic couplings, for defendants' commercial advantage whereby defendants illegally gain the entire market for said magnetic drive and coupling units in PRC Mainland China, wherein Plaintiffs must be protected from Defendants' attempt to profit from the Plaintiffs' substantial expenditure of time, labor and talent.

73. As more particularly set forth herein, and on information and belief, defendants' aforesaid acts and omissions have been in bad faith, since plaintiffs relied on defendants personal assurances that they, and the entities they control would ensure that all confidential proprietary trade secret information would be kept confidential.

74. Defendants have financially benefitted from the aforesaid unjust enrichment.

**75.** As a consequence of the aforesaid unjust enrichment by defendants, the plaintiffs have been substantially damaged, and should be compensated for defendants unjust enrichment in an amount to be determined at trial.

**76.** Plaintiffs request that all defendants be ordered to return all of the trade secrets (proprietary, confidential information and trade secrets) stolen by defendants to plaintiffs, and that defendants all be enjoined from any further possession or use of said trade secrets.

**<u>COUNT IX</u>**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

**Colorado Common Law**
***Omaha & Grant Smelting & Ref. Co. v Tabor*, 21 P.95 (Colo. 1889)**
***Byron v York Inv. Co.*, 296 P.2d 742 (Colo. 1956)**
***Maryland Cas. Co. v Messina*, 874 P.2d1058 (Colo. 1994)**

77. Plaintiff repeats and realleges the allegations of Paragraphs 1- 79 as if set forth in full herein.

78. As more particularly set forth herein, all defendants have wrongfully taken, and used, and exercised dominion over, all of plaintiffs' trade secrets (confidential proprietary information and trade secrets) without Plaintiffs' knowledge or authorization by taking engineering drawings and reverse engineering plaintiffs' ASD magnetic drive and FSC coupling units and digitally controlled actuators, and aiding PRD with manufacturing "knock offs" in Mainland China (PRC). The defendants' aforesaid acts were done without the knowledge and authorization of plaintiffs. Defendants knew the trade secrets

that defendant TS was transmitting to PRD were owned by plaintiffs and that defendant TS was wrongfully misappropriating plaintiffs' trade secrets, and defendant JR and his company ZC were under a duty, as authorized agent for James Pi as Joint Venture partner with plaintiff FDI, to disclose this information to plaintiffs. Defendant LZ was also under a duty to disclose this misappropriation information as an employee of PRD a party to the Joint Development Agreements.

**79.** As a consequence of the foregoing, Plaintiffs FDL, FDI and TTM have suffered and will continue to suffer damages and irreparable harm and loss, said damages to be determined at trial.

## PLAINTIFFS' JOINT PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A. That the Court find, adjudge and order that all defendants are liable for fraudulent concealment by unlawfully concealing the material fact from plaintiffs that defendant Michael Troy Sparks had secretly signed a multi-year contract, through his single member LLC defendant Cmonsense Design LLC, with PRD, making said contract with knowledge, conspiring, planning, material assistance, and coordination by all defendants being transmitted and coordinated to defendant TS by defendants JR, LW, ZC, and LZ, while defendant TS was still in the employ of plaintiffs FDI and TTM and was one of only three critical employees having access to all of plaintiffs compartmentalized proprietary information and trade secrets. This being part of a planned broad fraudulent scheme and

conspiracy to steal from three United States companies, namely, plaintiffs FDL, FDI and TTM valuable proprietary confidential trade secrets and plaintiffs relied to their detriment on defendants' fraudulent concealment, and therefore that that all defendants be ordered to pay all of plaintiff's damages in amounts to be determined at trial.

B. That the Court find, adjudge and order that defendant Michael Troy Sparks breached his employment agreement with plaintiff TTM, and that plaintiff TTM be compensated in an amount to be determined at trial.

C. That the Court find, adjudge and order that defendant TS breached his Trade Secrets Assignment Agreement with plaintiff FDL, and that Plaintiff FDL be compensated in an amount to be determined at trial.

D. That the Court find, adjudge and order that defendant TS breached the terms, conditions and obligations set forth in the Operating Agreement of plaintiff Flux Drive LLC, and that plaintiff FDL be compensated in an amount to be determined at trial.

E. That the Court find, adjudge and order that defendants' misappropriation of all of plaintiff's trade secrets were in violation of the Colorado Uniform Trade Secrets Act, and that plaintiffs be compensated in amount determined at trial, and that the Court further order that the defendants return all misappropriated trade secrets, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

F. That the Court find, adjudge and order that defendants' misappropriated plaintiff's trade secrets in violation of the Federal Defend Trade Secrets Act [18 USC §1836], and that said misappropriation by defendants was willful and malicious, and accordingly that defendants

be ordered to pay plaintiffs exemplary damages under 18 USC §1836(3)(C) of twice the compensatory damages plaintiffs are entitled to.

G. Further that all defendants be temporarily and permanently enjoined from using plaintiffs' trade secrets in the future in any manner whatsoever pursuant to the DTSA, and the Court further order that the defendants return all misappropriated trade secrets, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

**H.** That the Court find, adjudge and order that defendants are liable to plaintiffs under Colorado common law for Conversion,, and that defendants pay damages for said wrongful Conversion in an amount to be determined at trial, and that the Court further order that the defendants return all converted property rightfully belonging to plaintiffs, and that defendants be ordered to pay all of plaintiffs' damages resulting from said Conversion in amounts to be determined at trial.

**I.** That the Court find, adjudge and order that all defendants are liable under Colorado Common Law for Civil Conspiracy and under Colorado Statutes § 13-21-111.5(4) Civil Liability among all defendants, since defendants consciously conspired and deliberately pursued a common plan or design to commit a tortious act; namely, to deceive and defraud plaintiffs in order to wrongfully misappropriate, and convert plaintiffs confidential and proprietary information and trade secrets for defendants own unjust enrichment, benefit and advantage, and that defendants be ordered to pay all of plaintiffs' damages in amounts to be determined at trial.

J. That the Court find, adjudge and order that defendants have unjustly enriched themselves, to the detriment to plaintiffs, and that plaintiffs be compensated in amount determined at trial,

and that the Court further order that the defendants return all misappropriated trade secrets, and instruments thereof, including but not limited to, printed drawings, cad drawing files, and five (5) induction rotor assemblies, five (5) digital actuators, and printed manuals to plaintiffs.

K. That the Court find, due to the particularly malicious, willful, wanton, egregious, wrongful and illegal acts by all defendants herein, by defrauding plaintiffs and misappropriating valuable and critical trade secrets from small U.S. engineering and technical firms Flux Drive, LLC, Flux Drive, Inc., Impact Engineering, Inc., and Tri-Tec Manufacturing, Inc., and then wrongfully arranging for, and facilitating, through fraudulent concealment, the wrongful transfer of said plaintiffs' substantial and critical trade secrets, to said defendants acquaintance in Mainland China PRC, namely PRD, that that the Court therefore adjudge and order, in order to punish to defendants and to dissuade similarly situated persons as defendants from committing similar acts, that all of defendants pay punitive damages to Plaintiffs, in an amount to be determined at trial.

L. That the Court find, adjudge and order that pre-judgement and post-judgement interest on all amounts be paid to Plaintiffs.

M. That the Court find, adjudge and order that defendants pay plaintiffs' reasonable attorney's fees, expenses and costs.

N. That the Court find that the defendants are liable for wrongfully soliciting key members of plaintiffs FDI and TTM team members in an attempt to misappropriate and convert plaintiffs FD and TT's trade secrets, and that defendants be enjoined from soliciting, hiring, employing or otherwise engaging plaintiffs' key team members for a period of five (5) years.

O. Plaintiffs also request that the Court issue an injunction and/or Order to U.S. Customs and Border Protection, barring the import into the USA of any product that uses the wrongfully obtained plaintiffs' trade secrets by defendants and defendants mainland China acquaintance PRD. Further, that the Court issue an Order to the United States Patent and Trademark Office, declaring that any patent invalid issued to Defendants and to defendants' mainland China acquaintance PRD, that uses plaintiffs misappropriated trade secrets.

P. That the Court award all plaintiffs such other relief as the Court deems just and equitable.

Dated, this 2nd day of January 2025.

_s/Steven J. Miller____________________
Steven J. Miller, Esq.
Email: steve@miller-law-offices.com
THE MILLER LAW OFFICES, PLC
12724 Gran Bay Pkwy W. – Suite 410
Jacksonville, FL 32258
Tel.: 305-803-5168
Fax: 305-675-4605
*Attorney for Plaintiffs*

## CERTIFICATION OF SERVICE

I certify that on this 2nd day of January, 2025, I electronically filed a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of the Court via the CM/ECF system, which will send notification of such filing and service upon all counsel of record. Pro Se Defendants will be served via E-mail and USPS Certified Mail to the following:

Michael Troy Sparks and Cmonsense Design LLC
E-mails: 983ekimskraps@gmail.com , troy@cmonsensedesign.com
Address: 2450 Buffalo Mountain CT, Loveland, CO 80538
Tel.: 303-223-1258

*Pro Se Defendant*

Lijuan Zhao a/k/a Lora Zhao
E-mail: zhao_lijuan8@hotmail.com
Address: 329 Burncoat Street, Worcester, MA 01606

*Defendant not yet appeared*

*s/ Steven J. Miller*
Steven J. Miller